IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JONATHAN F. BOOTH,                          *

            Plaintiff,              *

v.                                          *        Civil Action No. RDB 05-1972

MARYLAND DEPARTMENT OF                      *
PUBLIC SAFETY & CORRECTIONAL
SERVICES, *et al.*,                         *

            Defendants.             *

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

MEMORANDUM OPINION

Pending before this Court are Motions for Reconsideration filed by Jonathan F. Booth ("Plaintiff" or "Booth") and the Maryland Department of Public Safety and Correctional Services and Warden James V. Peguese (collectively, "Defendants"). The issues presented by these motions have been fully briefed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons stated below, Plaintiff's Motion for Reconsideration of this Court's previous Order dismissing Count I of the Complaint and Defendants' Motion for Reconsideration of this Court's previous order denying Defendants' Motion to Dismiss Count III are DENIED.

BACKGROUND

The factual background and procedural history of this case are described in the Memorandum Opinion issued by this Court on July 7, 2006, and will not be repeated here. *See* Mem. Opinion, 7/7/06, pp. 2-10. In that Opinion, this Court granted Defendants' Motion to Dismiss with respect to Count I of the Complaint, which set forth a cause of action under 42 U.S.C. § 1983. This Court ruled that Plaintiff's claims against the Maryland Department of

Public Safety and Correctional Services (the "Department") and Warden Peguese in his official capacity should be dismissed because "'neither a State nor its officials acting in their official capacities are 'persons' under § 1983.'" Mem. Opinion, 7/7/06, p. 14 (quoting *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)).  This Court also found that Warden Peguese in his individual capacity was entitled to the defense of qualified immunity because Plaintiff's § 1983 claim did not involve "a 'clearly established' right of which a reasonable person would have known."  Mem. Opinion, 7/7/06, p. 16.

In the same Opinion, this Court denied Defendants' Motion to Dismiss Count III of the Complaint, which sets forth a cause of action under Article 36 of the Maryland Declaration of Rights.  After reviewing decisions from this Court and Maryland appellate courts, this Court observed that "'it is not clear that Maryland law provides a private right of action for damages under [Article 36].'"  Mem. Opinion, 7/7/06, p. 22 (quoting *Booth v. Maryland*, 207 F. Supp. 2d 394, 400 (D. Md.), *rev'd in part*, 327 F.3d 377 (4th Cir. 2003)).  Finally, after noting that "Plaintiff does not assert a private right of action," this Court denied Defendants' Motion to Dismiss Count III without addressing "whether Article 36 of the Maryland Declaration of Rights provides a private right of action for damages."  Mem. Opinion, 7/7/06, p. 23 n.16.

On July 17, 2006, Plaintiff filed a Motion for Reconsideration to request that this Court reconsider one aspect of its prior Memorandum Opinion and Order.  The basis of Plaintiff's motion is that this Court failed to recognize that Plaintiff adequately supported his conclusion that "the right to practice one's religion, a basic fundamental right guaranteed by the First Amendment, has been firmly established for some time, as has its application to the right to dress and wear one's hair in conformance with one's religious beliefs."  (Pl.'s Mot. to Reconsider p. 3.) On July 17, 2006, Defendants filed a Motion for Reconsideration to request that this Court

2

reconsider a different aspect of its prior Memorandum Opinion and Order.  Defendants contend

that this Court "erroneously concluded that Plaintiff does not assert a private cause of action, and

because no private cause of action exists under Article 36."[1]  (Defs' Mot. to Reconsider p. 2.)

Other procedural developments have transpired.  On June 19, 2006, the Circuit Court for

Baltimore City affirmed the Office of Administrative Hearings' decision that Plaintiff's

termination was proper.  (*See* Defs' Mot. to Reconsider Ex. 1.)  On September 26, 2006, Booth

filed another Complaint against the Department in this Court.  *See Booth v. Maryland*, RDB 06-

2579.  In this second action, Booth asserts four causes of action against the Department pursuant

to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII").  Defendants

have not filed an Answer and discovery has not commenced in either this action (RDB 05-1972)

or Plaintiff's second action (RDB 06-2579).[2]

## STANDARD OF REVIEW

The Order at issue is not a final judgment under Rules 59(e) or 60(b) of the Federal Rules

of Civil Procedure.  Instead, it is an interlocutory order under Rule 54(b).[3]  As a result, it "is

---

[1]      Defendants' Motion for Reconsideration does not address this Court's denial of
Defendants' Motion to Dismiss Count II of the Complaint.

[2]      In light of the fact that Plaintiff's cases before this Court involve identical issues
of law and fact, civil actions RDB 05-1972 and RDB 06-2579 will be consolidated pursuant to
Rule 42(a) of the Federal Rules of Civil Procedure by separate order.

[3]      Fed. R. Civ. P. 54(b) provides:

When more than one claim for relief is presented in an action,
whether as a claim, counterclaim, cross-claim, or third-party claim,
or when multiple parties are involved, the court may direct the entry
of a final judgment as to one or more but fewer than all of the claims
or parties only upon an express determination that there is no just
reason for delay and upon an express direction for the entry of
judgment. In the absence of such determination and direction, any
order or other form of decision, however designated, which

subject to reconsideration at any time prior to entry of a final judgment." *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1469 (4th Cir. 1991); *see also Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 12 (1983) (noting that "every order short of a final decree is subject to reopening at the discretion of the district judge").  Although it is unclear what the precise legal standard is for reconsidering an interlocutory order under Rule 54(b), this Court is guided by the principles for reconsidering decisions that have become the law of the case.  *See, e.g., Sejman v. Warner-Lambert Co., Inc.*, 845 F.2d 66, 69 (4th Cir. 1988) (decisions that have become law of the case must be followed unless "(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice.") (internal quotation marks omitted); *see also American Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003) (holding that a district court's broad discretion to reconsider interlocutory orders is narrowed in the context of motions to reconsider especially important issues such as subject matter jurisdiction).

<u>DISCUSSION</u>

I.      **Count I.**

Count I of the Complaint asserts causes of action based on 42 U.S.C. § 1983 against the Department and Warden Peguese in his official and individual capacities.[4]  (*See* Compl. ¶¶ 25-

_____

adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

[4]  42 U.S.C. § 1983 provides in relevant part:

4

30.)  Plaintiff does not challenge this Court's decision to dismiss his § 1983 claims against the

Department and Warden Peguese in his official capacity.  As a result, the only matter before this

Court with respect to Count I is whether this Court should reconsider its opinion that Warden

Peguese in his individual capacity is entitled to the defense of qualified immunity.

To state a claim under § 1983, Plaintiff must aver that a person acting under color of state

law deprived him of a constitutional right or a right conferred by a law of the United States.  *See*

*Dowe v. Total Action Against Poverty*, 145 F.3d 653, 658 (4th Cir. 1998).  In this case, Plaintiff

claims that he was deprived of his constitutional rights under the Free Exercise Clause of the

First Amendment, which is made applicable to the states through the Fourteenth Amendment.[5]

(*See* Compl. ¶ 26.)  As the United States Court of Appeals for the Fourth Circuit explained in

Plaintiff's prior litigation, the Free Exercise Clause prohibits government policies that are

"designed to suppress religious beliefs or practices unless justified by a compelling

governmental interest and narrowly tailored to meet that interest."  *Booth*, 327 F.3d at 380.

Where causes of action based on § 1983 are asserted against government officials in their

individual capacity, those officials are sometimes entitled to the defense of qualified immunity:

> Government officials are entitled to the defense of qualified
> immunity unless a § 1983 claim satisfies the following two-prong test
> (the "qualified immunity test"): (1) the allegations underlying the
> claim, if true, substantiate the violation of a federal statutory or

---

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of
> Columbia, subjects, or causes to be subjected, any citizen of the
> United States or other person within the jurisdiction thereof to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action
> at law . . .

[5]     The Free Exercise Clause provides that "Congress shall make no law . . .
prohibiting the free exercise" of religion. U.S. Const. amend. I.

constitutional right; and (2) this violation was of a "clearly established" right "of which a reasonable person would have known."

*Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006) (citations omitted); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (holding that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."); *Saucier v. Katz*, 533 U.S. 194, 200-04 (2001). In this case, Defendants claim that Warden Peguese is entitled to qualified immunity because the right at issue—previously characterized by both parties as the right to dress and wear one's hair in conformance with one's religious beliefs[6]—was not "clearly established" when the alleged violations occurred.

This Court's prior analysis of qualified immunity began with the observation that "[n]either Plaintiff nor Defendants address the first prong of the qualified immunity test, which involves determining whether the allegations underlying Plaintiff's claim would, if true, substantiate the violation of a federal statutory or constitutional right." Mem. Opinion, 7/7/06, p. 15. In his Motion for Reconsideration, however, Plaintiff addresses those allegations with greater specificity:

> The crux of Plaintiff's complaint in Count I is that, Defendant Peguese, the Warden of the Maryland House of Corrections, Annex, demoted and unlawfully terminated the Plaintiff, a Correctional Sergeant at the Annex, because the Plaintiff refused to cut dread locks, which he wore in deference to his Rastafarian religion.

(Pl.'s Mot. to Reconsider p. 1; *see also* Compl. ¶¶ 27-28.) Plaintiff also contends that Warden Peguese's actions demonstrate a "policy" of preferring correctional supervisors without

---

[6]     (*See* Defs' Mem. Supp. Mot. Dismiss pp. 9-10; Pl.'s Opp p. 10.)

dreadlocks that "is manifest[] in demoting the Plaintiff when he refused to cut his hair and thereafter terminating him on the pretext that he engaged in intentional conduct which threatened the safety of the workplace."[7]  (Pl.'s Mot. to Reconsider p. 2; *see also* Compl. ¶¶ 16 & 20.)

The qualified immunity issue in this case requires determining whether a correctional officer could reasonably have thought, in light of clearly established law, that Warden Peguese's conduct was consistent with Plaintiff's federal constitutional rights under the Free Exercise Clause.  *See Anderson v. Creighton*, 483 U.S. 635, 638 (1987).  For reasons explained below, this Court finds that Plaintiff's allegations, if true, would not substantiate the violation of his rights under the Free Exercise Clause.  In the alternative, this Court finds that even if such a violation were substantiated, it would not have been based on "clearly established" law.

The conduct at issue occurred during the period of November 2004 to March 2005. Specifically, Plaintiff contends that Warden Peguese was responsible for (1) Plaintiff's alleged demotion on November 17, 2004 from the position of Acting Lieutenant to the position of Sergeant, and (2) Plaintiff's alleged termination on March 7, 2005 for violation of safety regulations and other Department policies.  Plaintiff's termination followed the death of an inmate named Stephen Bell during Plaintiff's shift on February 28, 2005.  An investigation was conducted with respect to the death of Mr. Bell.  Plaintiff was subsequently terminated on grounds that he breached security, neglected his duties, and circumvented procedures.

---

[7]     Plaintiff's contention that Warden Peguese adopted a "policy" of preferring correctional supervisors without dreadlocks is not directly relevant to the issue before this Court. (*See* Pl.'s Mot. to Reconsider p. 2.)  Whether a public employer has adopted an unconstitutional "policy" is relevant to the determination of municipal liability under § 1983.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978).  However, this inquiry is not appropriate when evaluating a supervisor's potential liability in his individual capacity.  *See Randall v. Prince George's County*, 302 F.3d 188, 206, 210 (4th Cir. 2002) (inquiring into the existence of a policy to assess municipal liability, but employing separate analysis to determine individual supervisor's liability).

After reviewing Plaintiff's allegations, this Court finds that, even if true, those allegations do not substantiate the violation of the constitutional right asserted by Plaintiff.  In this case, the Department was faced with a serious incident: the death of a prison inmate that went unnoticed for some period of time.  An investigation was conducted with respect to this incident and certain allegations were made against Plaintiff.  Ultimately, Plaintiff contends that he was presented with a choice: accept a demotion or be terminated.   In response, Plaintiff alleges that "I refused because I had not violated any regulations."  (Booth Aff. ¶ 28.)   Even viewing these and Plaintiff's other allegations in the most favorable light, this Court concludes that it would not have been "apparent" to a correctional officer that Warden Peguese's conduct violated a clearly established constitutional right.  *Pinder v. Johnson*, 54 F.3d 1169, 1173 (4th Cir.) (*en banc*), *cert. denied*, 516 U.S. 994 (1995).  Accordingly, qualified immunity shields Warden Peguese from Plaintiff's § 1983 claim in Count I.

Assuming *arguendo* that Plaintiff's allegations would substantiate the violation of a constitutional right, this Court finds that the right asserted by Plaintiff was not clearly established during the relevant time period.  The parties agree that the right at issue here is the "right to dress and wear one's hair in conformance with one's religious beliefs. . . ."[8]  (Pl.'s Mot. to Reconsider p. 8.)  After reviewing the cases cited by Plaintiff, this Court concludes that it was not clearly established during the period of November 2004 to March 2005 that Warden Peguese's conduct resulted in the deprivation of Plaintiff's right to dress and wear one's hair in conformance with one's religious beliefs.  Plaintiff's papers treat the alleged right as absolute in nature.  However,

---

[8]     *See also Anderson*, 483 U.S. at 639 ("[T]he right the official is alleged to have violated must have been 'clearly established' in a [] particularized, and hence [] relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.").

such an interpretation of the right at issue is not supported by the decisions cited by Plaintiff.

For example, the many "grooming policy" decisions cited by Plaintiff stand for a more limited

principle, *i.e.*, that the First Amendment is violated where (i) exemptions are made from a neutral

grooming policy with respect to certain employees, and (ii) no substantial justification is offered

for refusing to grant exemptions to similarly situated employees.[9]   Accordingly, this Court

concludes that the violation alleged by Plaintiff was not of a clearly established right of which a

reasonable correctional officer would have known.  As a result, qualified immunity shields

Warden Peguese from Plaintiff's § 1983 claim in Count I.[10]

In sum, this Court finds that Plaintiff's allegations, if true, do not substantiate the

violation of his right to exercise his religion freely.  In the alternative, this Court finds that even

if such a violation were substantiated by Plaintiff's allegations, it would not have been based on

"clearly established" law.  The result is that Warden Peguese is entitled to the defense of

qualified immunity with respect to Plaintiff's § 1983 claim.  Accordingly, Plaintiff's Motion for

Reconsideration of this Court's previous order dismissing Count I of the Complaint is DENIED.

## II.      Count III.

---

[9]      *See*, *e.g.*, *Fraternal Order of Police Newark v. City of Newark*, 170 F.3d 359, 360 (3d Cir. 1999) ("Because the Department makes exemptions from its policy for secular reasons and has not offered any substantial justification for refusing to provide similar treatment for officers who are required to wear beards for religious reasons, we conclude that the Department's policy violates the First Amendment.").

[10]      This Court notes that, in terms of applying the "reasonable officer" test in the context of qualified immunity, it is important to take into account the decisions relating to Plaintiff's prior lawsuit.  *Compare Booth*, 207 F. Supp. 2d at 400 (noting that "there is no indication, either from their language or effect, that the rules that Booth challenges as violative of his rights were targeted at Rastafarians or members of other religious groups"); *with Booth*, 327 F.3d at 381 (explaining that Plaintiff's claim was that "the facially neutral [grooming] policy is being applied in a discriminatory manner because the Division has granted religious exemptions to others who were similarly situated to him").

Count III of the Complaint asserts that Defendants' conduct constitutes a violation of Article 36 of the Maryland Declaration of Rights.[11]  (*See* Compl. ¶¶ 34-35.)  As this Court previously noted, Defendants initially presented the following argument for dismissing Count III:

> The Court should dismiss Plaintiff's claim under Article 36 of the Maryland Declaration of Rights for the same reasons why it should dismiss Plaintiff's § 1983 claims under the First Amendment.  At least one member of this Court has held that Article 36 does not provide a private right of action for damages. *See Baird v. Haith*, 724 F. Supp. 367, 384 (D. Md. 1988).  Thus, Count Three of the Complaint against Warden Peguese should be dismissed.

(Mem. Opinion, 7/7/06, p. 14 (quoting Defs.' Mem. Supp. Mot. Dismiss p. 10).)  The sole basis for Defendants' request that this Court reconsider its prior ruling denying Defendants' Motion to Dismiss Count III is that "the Court erroneously concluded that Plaintiff does not assert a private cause of action, and because no private cause of action exists under Article 36."  (Defs' Mot. to Reconsider p. 2.)

As noted in the prior Opinion to which the Defendants are seeking reconsideration, this Court previously addressed private causes of action under Article 36 of the Maryland Declaration of Rights on two occasions.  *See Baird v. Haith*, 724 F. Supp. 367, 384 (D. Md.

---

[11]  Article 36 of the Maryland Declaration of Rights provides in relevant part:

> That as it is the duty of every man to worship God in such manner as he thinks most acceptable to Him, all persons are equally entitled to protection in their religious liberty; wherefore, no person ought by any law to be molested in his person or estate, on account of his religious persuasion, or profession, or for his religious practice, unless, under the color of religion, he shall disturb the good order, peace or safety of the State, or shall infringe the laws of morality, or injure others in their natural, civil or religious rights . . . .

1988); *Booth v. Maryland*, 207 F. Supp. 2d 394, 400 (D. Md. 2002).[12]  It is clear from those decisions that this Court initially recognized that the nature of the claims was a private cause of action, and then addressed whether such a claim could be brought under Article 36.  This Court acknowledges that Count III of the Complaint in this case does constitute a private cause of action, and this Court's previous opinion of July 7, 2006 was in error with respect to that initial evaluation.  However, there is still the question whether this private right of action for damages lies under Article 36.

In this case, Defendants have not presented sufficient grounds for concluding that Article 36 of the Maryland Declaration of Rights does *not* give rise to a private cause of action.  First, Defendants acknowledge that Maryland law is unclear on this point.  (*See* Defs' Mot. to Reconsider p. 4 n.2 ("Defendants also note that . . . there is *no* case law indicating that a violation of Article 36 of the Maryland Declaration of Rights gives rise to a private cause of action.") (emphasis added).)  Second, neither party has undertaken anything more than a cursory analysis with respect to whether Article 36 authorizes a private cause of action.  Such an analysis would consider, among other topics, whether Article 36 is self-executing, establishes individual rights, imposes a duty on the government, and provides an express remedy.  *Cf. Benson v. State*,

---

[12]     In 1988, Judge Murray observed that "there is no indication in Maryland law that there is any private right of action for damages under this Article."  *Baird v. Haith*, 724 F. Supp. 367, 384 (D. Md. 1988).  In 2002, Judge Motz noted that "it is not clear that 'Maryland law [provides a] private right of action for damages under this Article.'" *Booth v. Maryland*, 207 F. Supp. 2d 394, 400 (D. Md. 2002) (quoting *Baird*, 724 F. Supp. at 384).  Judge Motz concluded that alternative grounds existed for granting summary judgment in defendants' favor with respect to Booth's prior cause of action under Article 36.  *Id.* at 400.  The Fourth Circuit, however, took issue with those alternative grounds.  *See Booth v. Maryland*, 327 F.3d 377, 383 (4th Cir. 2003) ("Our resolution of the First Amendment claim necessarily requires us also to reverse the district court's grant of summary judgment as to . . . [the] concomitant state constitutional claims of religious discrimination under Articles 24 and 36 of the Maryland Declaration of Rights.").  Ultimately, Plaintiff's prior litigation settled before Judge Motz could revisit the question whether Article 36 gives rise to a private cause of action.

887 A.2d 525, 532-33 (Md. 2005) (concluding that Article 14 of the Maryland Declaration of Rights is self-executing and provides a private cause of action for declaratory and injunctive, but not monetary, relief); *Widgeon v. Eastern Shore Hospital Center*, 479 A.2d 921, 929 (Md. 1984) ("[W]here a statute establishes an individual right, imposes a corresponding duty on the government, and fails to provide an express statutory remedy, a traditional common law action will ordinarily lie.").

At this early stage in this litigation, the parties have not had the opportunity to brief in appropriate detail the legal question addressing the scope of Article 36 of the Maryland Declaration of Rights. While this Court has previously indicated some doubt with respect to that right, *see Baird*, 724 F. Supp. at 384; *Booth*, 207 F. Supp. 2d at 400, the Fourth Circuit has on at least one occasion suggested that this Court ensure that there is a sufficient factual review for purposes of considering the underlying legal issues, *see Booth*, 327 F.3d at 383. As a result, discovery must proceed and this matter can be addressed in subsequent motions. Accordingly, Defendants' Motion for Reconsideration of this Court's previous order denying Defendants' Motion to Dismiss Count III is DENIED.

<u>CONCLUSION</u>

For the reasons stated above, Plaintiff's Motion for Reconsideration of this Court's previous Order dismissing Count I of the Complaint and Defendants' Motion for Reconsideration of this Court's previous Order denying Defendants' Motion to Dismiss Count III are DENIED. A separate Order follows.

Dated: December 5, 2006      /s/ _____
                           Richard D. Bennett
                           United States District Judge